THE STATE OF OHIO, APPELLEE, *v.* JORDAN, APPELLANT.

[Cite as *State v. Jordan,* 101 Ohio St.3d 216, 2004-Ohio-783.]

(No. 2000–1833—Submitted November 18, 2003—Decided March 10, 2004.)

ALICE ROBIE RESNICK, J.

{¶ 1} On December 7, 1996, police discovered the murdered bodies of Gertrude Thompson and her companion Edward Kowalczk in the living room of their residence on Shenandoah Road in Toledo. Approximately a year and a half later, police discovered evidence linking defendant-appellant, James Jordan, to the murders. Appellant was extradited from Texas, where he was serving a sentence for an unrelated crime. He was indicted for the murders of Thompson and Kowalczk and chose to represent himself at trial. Appellant was found guilty of aggravated murder and was sentenced to death.

I. Facts and Case History

{¶ 2} In early December 1996, Robert Barton, a mail carrier on the Shenandoah Road route in Toledo, noticed mail piling up in the mailbox of Gertrude Thompson and Edward Kowalczk. Barton knew both of them and was concerned because a parcel by the front door had not been taken inside. On December 7, 1996, Barton suggested to the victims' neighbor that police be called to investigate the whereabouts of the couple, who had not been seen for several days.

{¶ 3} Police arrived at the house but got no response after repeatedly knocking on the door. They went to the rear of the house and found the back door unlocked. Boxes blocked the back door from the inside, but police pushed them away to enter the premises. Police then discovered the bodies of Thompson and Kowalczk in the living room.

{¶ 4} Detective David Mullin, the primary investigator, described the crime scene as "[e]xtremely violent * * *. Probably one of the most violent I've ever seen." Thompson and Kowalczk maintained a "cluttered" house, according to their children, but the crime scene showed signs of a major struggle. The victims sustained numerous physical injuries, and the living room walls and furniture were spattered with blood.

{¶ 5} At the crime scene, police collected DNA evidence, including a blood droplet on a piece of paper ten feet away from the bodies, that raised "a red flag"

to investigators. Police also discovered drops of blood on a purple box and ceramic pot that, due to the placement of the droplets, appeared to be from someone other than the victims.

{¶ 6} A double-elephant pendant was missing from Thompson when her body was discovered. Thompson's father had given it to her when she was a little girl, and she was known to have worn it all the time.

{¶ 7} The deputy coroner testified that Thompson and Kowalczk suffered numerous injuries, including bruises, abrasions, lacerations, stab wounds, and depressed skull fractures. The coroner concluded that both victims had died as the result of blunt force injuries to the head and had been dead at least three days before their bodies were discovered.

{¶ 8} Following the murders, the investigation focused on Ethan Walls, who had rented property from Gertrude Thompson. JoAnn Person Harvey had told Detective Mullin she had seen Walls three days after the murders. Harvey made statements to police tending to implicate Walls in the murders of Thompson and Kowalczk, which she later recanted.

{¶ 9} The murder investigation made little progress until July 1998. At that time, Annette Chiaverina, who owned a Toledo pawnshop with her husband, was reading through old newspapers and saw an article with a photo of a double-elephant pendant. Chiaverina recalled that two black males had sold the double-elephant pendant to her. The pawn shop records indicate that on December 3, 1996, Gordy Candie pawned the pendant for $20. Chiaverina found the pendant in her safe and called Toledo Police Detective Reasti, who confirmed that it was the pendant that they had been looking for.

{¶ 10} Detective Scott and another detective took the double-elephant pendant with them and contacted Candie at his residence. Candie told police that he had known appellant since the 1970s and had seen him at the St. Paul's Community Center on December 3, 1996. According to Candie, appellant asked him whether he had any ID because appellant did not, and appellant wanted to pawn a "broach" [sic] with two elephants on it. Appellant told Candie he would split the proceeds if Candie would pawn the pendant for him. Upon pawning the double-elephant pendant for $20, Candie signed a paper and showed his ID, which was copied and made part of the pawnshop records. Candie stated that after he left the pawnshop, he and appellant went to Candie's home and got high on crack cocaine. Candie saw appellant the following day at St. Paul's but did not see him after that.

{¶ 11} Candie voluntarily accompanied Mullin to the health department, where Candie submitted two blood samples, which were sent to the DNA laboratory at the Medical College of Ohio. Police thereafter discovered that appellant was in prison in Texas and obtained blood samples from him pursuant to a warrant.

After DNA testing of 15 suspects' blood over the years, including appellant's, the supervisor of the DNA laboratory concluded, to a reasonable degree of scientific certainty, that the unknown blood found in several places at the crime scene was appellant's blood.

{¶ 12} On October 2, 1998, the grand jury indicted appellant on four counts of aggravated murder, each carrying three death penalty specifications: (1) murder in connection with an aggravated robbery pursuant to R.C. 2929.04(A)(7); (2) murder in connection with an aggravated burglary pursuant to R.C. 2929.04(A)(7); and (3) murder as a course of conduct involving the killing or attempt to kill two or more persons pursuant to R.C. 2929.04(A)(5). Appellant was also indicted on two counts of aggravated robbery and one count of aggravated burglary. Appellant was subsequently brought to Lucas County from Texas to stand trial.

{¶ 13} In the months leading up to trial, appellant obtained new counsel but wanted to represent himself. Appellant executed a waiver in court, and his attorneys were appointed as advisory counsel. The prosecutor raised the issue of whether appellant was competent to waive counsel, but advisory counsel discounted any notion that competency was an issue with appellant's decision. The trial court agreed and confirmed appellant's competency to represent himself.

{¶ 14} At trial, appellant testified under oath on his own behalf. Appellant claimed that he had worked for Thompson for four years and that his DNA is "probably in all of Gertrude Thompson's property because [he had] been there" moving items, installing pipes, and painting. Appellant asserted that he never "did anything" to the victims, and claimed he was "the perfect scapegoat" because he was already in prison. He further claimed that Thompson was a friend, and on cross-examination asserted that Candie had lied about the specifics of pawning the elephant pendant.

{¶ 15} The jury found appellant guilty on all counts and specifications except Count six—the aggravated robbery of Kowalczk.

{¶ 16} Appellant executed a waiver of rights to present mitigating evidence. The prosecuting attorneys then raised the issue of appellant's competency but stated that they saw nothing to indicate that appellant was not competent to waive the presentation of mitigating evidence. The court agreed, stating: "The Court has observed Mr. Jordan through the last two weeks of this trial, has found Mr. Jordan to be not only not incompetent, but a very competent, very intelligent person."

{¶ 17} The trial court merged the four aggravated murder counts into two counts (one for each victim). After deliberation, the jury found that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt and recommended the death penalty on both counts. The trial court sentenced

appellant to death for the murders and to prison terms on the remaining counts. The cause is now before this court upon an appeal as of right.

{¶ 18} Appellant has raised nine propositions of law. We have reviewed each and have determined that none justifies reversal of appellant's convictions for aggravated murder. Pursuant to R.C. 2929.05(A), we have also independently weighed the aggravating circumstances against the mitigating factors and have reviewed the death penalty for appropriateness and proportionality. We find that the aggravating circumstances in each count outweigh the factors in mitigation beyond a reasonable doubt. Therefore, we affirm appellant's convictions and sentence of death.

## II. Pretrial Issues

### A. Competency to Waive Counsel

{¶ 19} In his first proposition of law, appellant argues that the trial court erred in failing to make a proper determination of competency or to order a competency evaluation when appellant declared his desire to waive representation by counsel. Appellant also contends that defense counsel rendered ineffective assistance by not urging the trial court to order a competency evaluation prior to the time they were removed as counsel and appointed as advisory counsel for appellant.

{¶ 20} The facts underlying appellant's waiver of his right to counsel were as follows: On February 16, 2000, appellant told the trial court that he did not want his court-appointed attorneys: "I won't have anything to do with them." Two days later, appellant filed a motion to waive counsel and to proceed pro se. Then, at a February 28 hearing, appellant reiterated that he was not satisfied with his counsel and wished to represent himself. Appellant claimed that counsel had met with him only three times. On March 9, the trial court denied appellant's motion to waive counsel and the next day appointed new counsel to represent appellant. Several pretrial hearings took place at which new defense counsel represented appellant.

{¶ 21} At a pretrial hearing on July 21, appellant again asserted that he wanted to represent himself: "The point I'm getting across is, the Sixth Amendment says I have a right to participate in this trial. * * * If I say anything—if I say anything to my rights, to mess my rights up, then I'm willing to accept that responsibility." The trial court then questioned appellant pursuant to *State v. Gibson* (1976), 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, paragraph two of the syllabus, about his wish to waive counsel. Appellant expressed his reasoning behind the desire to represent himself: "Because I don't feel with the lawyers that I'm being appointed that I'm going to get the proper representation.

They're not listening to me. They're not doing the things I ask them to do. Plain and simple. I don't feel comfortable with it."

{¶ 22} Appellant then executed his waiver of counsel, which the trial court accepted. The court told appellant that he could request representation by counsel again at any time. The court then appointed appellant's defense counsel as advisory counsel. At the prosecutor's request, the trial court reminded appellant that his decision to proceed pro se would affect appellate and postconviction claims, including the claim that he was denied effective assistance of counsel.

{¶ 23} At a pretrial hearing on July 27, the trial court again questioned appellant regarding his desire to represent himself. The court asserted that further inquiry was necessary, since the waiver of counsel is not a mere procedural formality. The trial court referred to *Von Moltke v. Gillies* (1948), 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309, in reading over the indictment with appellant and explaining how the trial would proceed. The court asked appellant to think about his decision to represent himself. However, appellant asserted: "Yes, Your Honor, I understand everything you said. I understand the consequences and everything and I still wish to proceed pro-se. * * * Because I feel it's best for me. This is my personal opinion, what I want to do. It's the way I want to do the case." Appellant then executed a duplicate second waiver of right to counsel.

{¶ 24} A few days later, at a July 31 pretrial hearing, the prosecutor noted that no competency issue had been raised in the case and asked the court and advisory counsel whether there were any issues regarding appellant's competency. By this time, appellant had been interviewed by a psychologist and had undergone tests. Upon the court's inquiry, appellant's advisory counsel Adrian Cimerman responded: "There are no such indications of any competency problem, Your Honor. We've had no problem discussing the case with Mr. Jordan or acting as in an advisory capacity." When asked if the attorneys had observed anything "that would raise a flag" as to appellant's competency, advisory counsel Cimerman stated: "Nothing whatsoever." Advisory co-counsel John Thebes added, "I would agree with Mr. Cimerman based on my observations, Your Honor."

{¶ 25} The trial court agreed with advisory counsel regarding appellant's competence to stand trial and assist in his defense: "[W]e've had hours and hours of hearings with Mr. Jordan, and I have not had or seen or observed anything that would lead me to believe that Mr. Jordan is not competent to aid and assist, in fact, lead his defense, other than his lack of legal expertise on the highest level of case that can be heard."

{¶ 26} The Sixth and Fourteenth Amendments to the United States Constitution guarantee a state criminal defendant the constitutional right of self-representation, to proceed without counsel, when the defendant voluntarily, knowingly, and intelligently elects to do so. *Gibson*, 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, paragraph one of the syllabus, citing *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. To establish an effective waiver of counsel, the trial court must make sufficient inquiry to determine whether a defendant fully understands and intelligently relinquishes that right. Id., paragraph two of the syllabus.

{¶ 27} Until ten years ago, courts around the country were split as to whether the standard of competence to waive counsel was higher or more stringent than the standard of competence to stand trial. However, the United States Supreme Court, in *Godinez v. Moran* (1993), 509 U.S. 389, 397, 113 S.Ct. 2680, 125 L.Ed.2d 321, resolved the issue by holding that the standard of competence to waive the right to counsel is the same as the standard for competency to stand trial. Thus, the standard of competency to waive the right to counsel is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has a "rational as well as factual understanding of the proceedings against him." *Dusky v. United States* (1960), 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824.

{¶ 28} Moreover, a state may presume that a defendant is competent to be tried and may require him to prove his incompetence by a preponderance of the evidence. *Medina v. California* (1992), 505 U.S. 437, 445–446, 112 S.Ct. 2572, 120 L.Ed.2d 353. The allocation of the burden of proof regarding a defendant's competence is well established in Ohio. "One who challenges * * * competence to be tried must bear the burden of proof to challenge those presumptions." *State v. Scott* (2001), 92 Ohio St.3d 1, 4, 748 N.E.2d 11.

{¶ 29} Appellant essentially asserts that the trial court erred in failing to make a determination of competence or to order a competency evaluation. However, appellant's assertion ignores the law's presumption that the defendant is competent. Moreover, nothing in the record raised questions concerning appellant's competence to be tried or to waive counsel. "The right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains 'sufficient indicia of incompetence,' such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial." *State v. Berry* (1995), 72 Ohio St.3d 354, 359, 650 N.E.2d 433; *State v. Spivey* (1998), 81 Ohio St.3d 405, 410, 692 N.E.2d 151.

{¶ 30} Here, the prosecutor, not the defense, raised the issue of appellant's competence at the July 31, 2000 pretrial hearing by stating that this issue had not been addressed. As set forth above, the trial court asked both of appellant's

advisory attorneys about appellant's competence. Both attorneys disclaimed any concerns about appellant's competence. If counsel had some reason to question appellant's competence, they surely would have done so. See id., 81 Ohio St.3d at 411, 692 N.E.2d 151. The trial court added that it had not seen or observed anything from appellant that called appellant's competence into question. In sum, appellant's behavior did nothing to indicate good cause or "sufficient indicia of incompetence." Thus, we conclude that the trial court did not abuse its discretion by not sua sponte directing a competency hearing. See Berry, 72 Ohio St.3d at 359, 650 N.E.2d 433. Deference on such issues should be left to those "who see and hear what goes on in the courtroom." State v. Cowans (1999), 87 Ohio St.3d 68, 84, 717 N.E.2d 298.

{¶ 31} Since defense counsel saw no reason to question appellant's competence to waive counsel, we find that they did not render ineffective assistance by failing to request a competency evaluation. Nor does appellant point to anything in the record that counsel should have viewed as a "flag" to prompt questions concerning his competence to waive counsel or stand trial. Further, our review of the complete record reveals nothing to indicate that counsel were ineffective for failing to request a competency hearing. See State v. Tyler (1990), 50 Ohio St.3d 24, 38–39, 553 N.E.2d 576.

{¶ 32} Accordingly, we overrule appellant's first proposition.

### B. Motion to Suppress

{¶ 33} In his sixth proposition of law, appellant contends that the trial court erred in failing to grant his motion to suppress the blood and saliva samples obtained from him pursuant to a search warrant. Appellant asserts that the affidavit supporting the warrant was clearly lacking indicia of probable cause.

{¶ 34} On or about August 7, 1998, Michael DeLaFlor, an investigator for the Tarrant County District Attorney's Office ·in Fort Worth, Texas, obtained a search warrant from a Texas judge to collect blood and saliva samples from appellant. DeLaFlor acted on behalf of the Toledo Police Department and obtained the warrant based on information supplied to him by Detective Mullin.

{¶ 35} In the affidavit requesting the search warrant, DeLaFlor averred that Thompson and Kowalczk were murdered in Toledo in December 1996, that some blood recovered at the scene did not belong to either victim, and that a gold pendant displaying two elephants had been stolen during the robbery/homicide. DeLaFlor's affidavit stated that in July 1998, after reading an old newspaper article about the pendant and its link to two murders, a pawnshop owner had contacted Toledo police about a double-elephant pendant in her safe. The pawnshop owner had shown police her records indicating that Gordy Candie had pawned the pendant on December 3, 1996.

{¶ 36} The affidavit further alleged that Candie was contacted by police, and when shown the pendant, he immediately stated that James Jordan had asked him to pawn it for him because Jordan had no photo identification. In addition, the affidavit detailed that Jordan also had agreed to split the proceeds with Candie, which they used to purchase crack cocaine, that Candie was "extremely cooperative and forthright" with police when interviewed, and that his information corresponded with information from the pawnshop owner. Further, the affidavit asserted that Candie had stated that he had known Jordan since 1971, when they served time together in prison.

{¶ 37} In *Illinois v. Gates* (1983), 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527, the United States Supreme Court reviewed the sufficiency of probable cause in an affidavit requesting a search warrant. The Supreme Court held: "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Accord *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus. In *Gates,* 462 U.S. at 235, 103 S.Ct. 2317, 76 L.Ed.2d 527, the court elaborated that the standard of probable cause is only the probability, and not a prima facie showing, of criminal activity.

{¶ 38} Moreover, "[i]n conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *George,* 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph two of the syllabus, following *Illinois v. Gates.*

{¶ 39} The state contends that *State v. Garner* (1995), 74 Ohio St.3d 49, 656 N.E.2d 623, is applicable here. In *Garner,* 74 Ohio St.3d at 63, 656 N.E.2d 623, this court stated that "[i]nformation coming from a citizen eyewitness is presumed credible and reliable, and supplies a basis for a finding of probable cause in compliance with *Gates.*"

{¶ 40} Appellant claims that *Garner* is readily distinguishable on several grounds. First, *Garner* involved a cab driver as the "citizen eyewitness," whereas Candie was an admitted felon and drug user who smoked crack cocaine the night he pawned the pendant. Second, it was Candie who pawned the pendant, not appellant. Third, it was Candie who gave appellant's name to police. Appellant asserts that but for Candie's unreliable and self-serving statements, nothing in the affidavit suggests that probable cause existed to indicate that appellant's blood and saliva would uncover evidence of wrongdoing.

{¶ 41} However, despite appellant's arguments, we find that *Garner* supports the trial court's decision to uphold the validity of the affidavit supporting the search warrant. Nothing suggests that Candie was aware of the murders or that he knew the pendant had been stolen. Similar to the facts in *Garner*, Candie was neither a confidential nor an anonymous informant, nor was he repeating hearsay information. As in *Garner*, police contacted the witness after obtaining information through their investigation. Candie was not trading information to police to work out any deal or to relieve himself of suspicion. In fact, Candie voluntarily supplied blood samples to police, thus enhancing the credibility of his information.

{¶ 42} In our view, Candie's admission that he used the proceeds from the pendant to buy crack cocaine reflects that he was candid with police, thus making the other information he gave more reliable, not less. Moreover Candie's admission to being a felon who had served time in prison with appellant enhanced his credibility in two ways. The admission underscored his connection to appellant, and it showed that Candie was not trying to hide his background from police. More important, the affidavit clearly averred that Candie's information independently corroborated information supplied by the pawnshop owner.

{¶ 43} The trial court, in viewing the facts of the affidavit, found that the issuing magistrate had a substantial basis for concluding that the search would uncover evidence of wrongdoing and satisfied the requirements of the Fourth Amendment. Based on the foregoing, we agree that the magistrate had a substantial basis for concluding that probable cause existed. Even if Candie's information could somehow be characterized as doubtful or marginal, which it is not, the deference accorded the magistrate's determination of probable cause would compel us to conclude that the search warrant was nevertheless valid. *George*, 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph two of the syllabus. Therefore, we reject appellant's sixth proposition.

### III. Trial Issue: Failure to Grant a Continuance

{¶ 44} In appellant's seventh proposition of law, he asserts that the trial court abused its discretion in failing to grant him a continuance to locate a defense witness on the eighth day of trial.

{¶ 45} " 'The grant or denial of a continuance is a matter [that] is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion.' " *State v. Jones* (2001), 91 Ohio St.3d 335, 342, 744 N.E.2d 1163, quoting *State v. Unger* (1981), 67 Ohio St.2d 65, 67, 21 O.O.3d 41, 423 N.E.2d 1078. In evaluating a motion for a continuance, "[s]everal factors can be considered: the length of the delay requested, prior continuances, inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors." *State v. Landrum* (1990), 53 Ohio St.3d 107, 115, 559 N.E.2d 710.

{¶ 46} The transcript indicates that Cheryl Leake was subpoenaed as a defense witness but could not be located. On August 18, 2000, advisory counsel informed the court that Leake resided in Findlay but was served the subpoena in Toledo. Advisory counsel feared that she might leave the county and become unavailable. On August 21, appellant's process server informed the court that he had advised Leake that he would take her to court from her mother's house. However, she was not at her mother's home when he arrived there. Since Leake had failed to appear in court, the trial judge issued a warrant for her arrest. On August 22, the prosecutor informed the court that Leake's mother said that her daughter had panicked and fled because she had felt threatened with arrest. The following day, the prosecutor told the court that despite efforts of the state and police, authorities had been unable to locate Leake because she was hiding from them. The court informed appellant that all concerned had acted "above and beyond" their duty in trying to locate Leake but that she was hiding or had absconded.

{¶ 47} Appellant requested a continuance. The state objected that given the efforts made to locate Leake, there was no guarantee that authorities could produce her within a reasonable time. The state also asserted that Leake's testimony would merely be cumulative of the testimony already given by defense witness Jo Ann Person Harvey. The trial court denied appellant's request for a continuance, finding that "reasonable and fair efforts" had been undertaken to secure Leake's presence. The defense then proffered the transcript of the taped interview police had had with Leake on April 16, 1997.

{¶ 48} The trial court did not abuse its discretion in denying the requested continuance. Nothing in the record suggests that Leake's attendance would have been secured if a continuance had been granted or that she would have been available to testify. Moreover, appellant never indicated the length of his requested continuance.

{¶ 49} We also find that the factor of inconvenience supports the trial court's denial of appellant's requested continuance. The state had rested its case during the trial phase, and the defense had already called several witnesses, although appellant himself had not yet testified. An open-ended continuance would have delayed the conclusion of the trial phase in the hope of locating a reluctant witness, to the inconvenience of all involved with the trial.

{¶ 50} Moreover, based on the transcript of Leake's taped interview with police, we conclude that her testimony was not crucial to the defense. The transcript reveals that Leake was with JoAnn Person Harvey in early December 1996 when they saw Ethan Walls. Both suggested to police that Walls had murdered Thompson and Kowalczk. However, Harvey later recanted her statements implicating Walls in the murders.

{¶ 51} Since no abuse of discretion occurred, we overrule appellant's seventh proposition.

## IV. Sentencing Issues

### A. Competency to Waive Mitigation

{¶ 52} In his second, third, and fourth propositions of law, appellant contends that the trial court erred in finding him competent and in allowing him to waive the presentation of mitigating evidence.

{¶ 53} In appellant's second proposition of law, he argues that this court should revisit its holdings in *State v. Tyler*, 50 Ohio St.3d 24, 553 N.E.2d 576; *State v. Ashworth* (1999), 85 Ohio St.3d 56, 706 N.E.2d 1231; and *State v. Cowans*, 87 Ohio St.3d 68, 717 N.E.2d 298, and should require that a competency evaluation be conducted whenever a capital defendant chooses both to represent himself and to waive presentation of all mitigating evidence. Appellant asserts that those three cases are "ultimately distinguishable" from his case because in all three cases, the defendants were represented by counsel, whereas here, appellant waived both his right to present mitigating evidence and his right to counsel during both phases of his capital trial.

{¶ 54} In *Tyler*, the defendant waived presentation of five witnesses that counsel had arranged to have testify during the mitigation phase. The defendant chose to rely entirely on his unsworn statement. This court noted in *Tyler*, 50 Ohio St.3d at 28, 553 N.E.2d 576, that where a defendant chooses to forgo presentation of mitigating evidence, "no societal interest counterbalances his right to control his own defense." In *Tyler*, this court also rejected the defendant's argument that when a defendant refuses to let mitigation witnesses be called, that alone should compel the trial court to conduct a competency hearing. "[E]ven if a capital defendant waives mitigation completely because he wants to be executed, that waiver does not by itself call his competence into question." Id., 50 Ohio St.3d at 29, 553 N.E.2d 576.

{¶ 55} In *Ashworth*, 85 Ohio St.3d at 62, 706 N.E.2d 1231, this court held that "when a defendant wishes to waive the presentation of *all* mitigating evidence, a trial court must conduct an inquiry of the defendant on the record to determine whether the waiver is knowing and voluntary. The trial court must decide whether the defendant is competent and whether the defendant understands his or her rights both in the plea process and in the sentencing proceedings." (Emphasis sic.)

{¶ 56} This court then added: "We are not holding that a competency evaluation must be done in every case in which a defendant chooses to waive the presentation of mitigating evidence. See *Tyler*, 50 Ohio St.3d at 29, 553 N.E.2d at 585. A trial court should be cognizant of actions on the part of the defendant

that would call into question the defendant's competence. However, absent a request by counsel, or any indicia of incompetence, a competency evaluation is not required." *Ashworth*, 85 Ohio St.3d at 62, 706 N.E.2d 1231.

{¶ 57} Also in *Ashworth*, this court established the following standard to apply when the defendant waives presentation of all mitigating evidence and where the issue of competency is raised: "A defendant is mentally competent to forgo the presentation of mitigating evidence in the penalty phase of a capital case if he has the mental capacity to understand the choice between life and death and to make a knowing and intelligent decision not to pursue the presentation of evidence. The defendant must fully comprehend the ramifications of his decision, and must possess the ability to reason logically, *i.e.,* to choose means that relate logically to his ends." Id., paragraph two of the syllabus.

{¶ 58} Then, in *Cowans,* 87 Ohio St.3d at 84–85, 717 N.E.2d 298, this court reaffirmed *Ashworth* and stated that a reviewing court must give deference to the determination of the trial judge who sees and hears what goes on in the courtroom.

{¶ 59} Based on the foregoing precedents, we find that the trial court was not required to conduct a competency hearing as urged by appellant. Appellant was advised of the possible consequences of his decision to waive mitigation. Courts have uniformly upheld a competent defendant's right to control his or her own defense, whether it involves self-representation, *Faretta,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, or a decision to waive presentation of mitigating evidence, *Ashworth.* Appellant points to nothing either inside or outside the record that calls his competence into question. Nor does he provide any compelling reasons for us to abandon our holdings in *Tyler, Ashworth,* or *Cowans* beyond the arguments we have previously rejected in those three cases.

{¶ 60} Nor are we persuaded that the instant case is distinguishable simply because appellant chose to represent himself *and* waive presentation of mitigating evidence. In *Tyler,* 50 Ohio St.3d at 28, 553 N.E.2d 576, this court noted that the California Supreme Court determined that self-representation had no bearing on the reliability of a death sentence determination where the defendant who waived mitigation also represented himself. See *People v. Bloom* (1989), 48 Cal.3d 1194, 1228, 259 Cal.Rptr. 669, 774 P.2d 698.

{¶ 61} Appellant's argument under his third proposition of law is related to his argument in his second. In his third proposition, appellant asserts that the determination of a defendant's competency to waive mitigation must be based on his mental capacity and the standards established by the United States and Ohio Supreme Courts, not on the defendant's "intelligence." In this regard, appellant refers to the trial court's statement: "The Court has observed Mr. Jordan through the last two weeks of this trial, has found Mr. Jordan to be not only not

incompetent, but a very competent, very intelligent person." The trial court then repeated its opinion that it found appellant to be intelligent as well as competent.

{¶ 62} Contrary to appellant's assertion, we note that a defendant's intelligence is part of the *Ashworth* standard that a trial court must take into account in determining whether a defendant is competent to waive presentation of mitigating evidence when the issue of competency is raised. A defendant's waiver of the presentation of mitigating evidence must be "a knowing and intelligent decision." *Ashworth,* 85 Ohio St.3d 56, 706 N.E.2d 1231, paragraph two of the syllabus. Thus, appellant is incorrect in claiming that the trial court erred in considering his intelligence in its determination of whether his desire to waive the presentation of mitigating evidence should be honored.

{¶ 63} Appellant also points out that the trial court did not explicitly find that he met the *Ashworth* standard of "possess[ing] the ability to reason logically, *i.e.,* to choose means that relate logically to ends." Id. Appellant contends that unlike the defendants in *Tyler* and *Ashworth,* who waived presentation of mitigation to choose the "end" of a death sentence, he never stated his reasons for waiving the presentation of mitigating evidence or what ends he desired to achieve by doing so.

{¶ 64} However, the *Ashworth* standard does not require the trial court to determine why a defendant chooses to waive mitigation, so long as the trial court determines that the waiving defendant "possess[es] the ability to reason logically." Id. To adopt appellant's argument would automatically render a defendant incompetent if the defendant did not announce, or the court did not determine, the defendant's precise reason for waiving presentation of mitigating evidence. An otherwise logical, competent defendant may choose to waive mitigation simply because he wishes to exercise the right to do so.

{¶ 65} In any event, appellant's competency to waive mitigation was never raised as an issue by advisory counsel, nor does the record reveal any indicia of incompetency. The trial court stated that based upon his observations of appellant during the months leading up to and including the trial, "the Court found that he possessed the ability to reason logically, and that he was competent." The record indicates that appellant was never disruptive during the proceedings and did not exhibit irrational or erratic behavior.

{¶ 66} As this court has noted, "So long as the 'definitional predicates' for the death sentence are proven, we believe that the trial court was obliged to honor appellant's choice 'out of "that respect for the individual which is the lifeblood of the law." ' " *Tyler,* 50 Ohio St.3d at 29, 553 N.E.2d 576, quoting *Faretta,* 422 U.S. at 834, 95 S.Ct. 2525, 45 L.Ed.2d 562, quoting *Illinois v. Allen* (1970), 397 U.S. 337, 350–351, 90 S.Ct. 1057, 25 L.Ed.2d 353 (Brennan, J., concurring). To do otherwise would be "to imprison a man in his privileges and call it the Constitu-

tion." *Adams v. United States ex rel. McCann* (1942), 317 U.S. 269, 280, 63 S.Ct. 236, 87 L.Ed. 268. Since the trial court ultimately found that appellant "possessed the ability to reason logically," the court did not run afoul of the standards this court established in *Ashworth.*

{¶ 67} In his fourth proposition of law, appellant contends that the trial court did not follow the *Ashworth* requirements necessary for a valid waiver of the presentation of mitigating evidence. Appellant also asserts that the trial court failed to inform him that if no mitigation was presented, the only lawful verdict the jury could return would be the death sentence. We disagree.

{¶ 68} At the close of the trial phase, the court explained to appellant his right to present mitigating evidence and explained what mitigating factors entail. Appellant told the trial court that he did not wish to present any mitigating evidence. Upon questioning by the trial court, appellant indicated that he understood the choice between life and death.

{¶ 69} At the hearing the following day, the court told appellant that he had the right to make a statement in mitigation, either sworn or unsworn, and that he did not have to decide then whether he wanted to waive presentation of mitigating evidence. Although appellant indicated that he would waive presentation of mitigation, the court urged him to think over his decision and discuss it with his advisory counsel.

{¶ 70} Three days later, on August 28, 2000, prior to the start of the mitigation hearing, appellant was given a "waiver of right to present evidence in mitigation form," which, upon questioning by the trial court, he declared he understood. The written waiver stated:

{¶ 71} "Defendant acknowledges that he understands that mitigating factors are factors that lessen the moral culpability of the offender or diminish the appropriateness of a sentence of death, and that mitigating factors are factors about an individual or an offense which weigh in favor of a decision that a life sentence is the appropriate sentence. Further, the Defendant comprehends that the presentation of mitigating evidence is important in order to offset the aggravating circumstances. In addition, the Defendant understands that failure to present mitigating evidence may lead to the imposition of a sentence of death. Defendant asserts that he does comprehend the choice between life and death and that he makes a knowing and intelligent decision not to pursue the presentation of mitigating evidence.

{¶ 72} "Defendant has been asked if he understood this information and satisfied the Court that he did, and that he voluntarily and knowingly waives his right to present evidence in mitigation during the second phase of the above-captioned case."

{¶ 73} Appellant then executed the written waiver, which was witnessed by his advisory counsel and also signed by the trial judge. After appellant signed the waiver, the prosecutor informed the trial court that under *Ashworth,* "the Court also must make a finding that the defendant is competent to make such a waiver." The court then found that appellant was "not only not incompetent, but a very competent, very intelligent person." At the sentencing hearing, the trial court reiterated that it found that appellant "possessed the ability to reason logically, and that he was competent."

{¶ 74} In *Cowans,* 87 Ohio St.3d at 85, 717 N.E.2d 298, this court noted, citing *Ashworth,* 85 Ohio St.3d at 62, 706 N.E.2d 1231: "Pursuant to *Ashworth,* the record must affirmatively demonstrate that (1) the court has informed the defendant of the right to present mitigating evidence, (2) the court has explained what mitigating evidence is, (3) the defendant understands the importance of mitigating evidence, (4) the defendant understands the use of mitigating evidence to offset the aggravating circumstances, (5) the defendant understands the effect of failing to present mitigating evidence, and (6) the defendant wishes to waive mitigation."

{¶ 75} Here, we find that all of the *Ashworth* requirements except (4) were satisfied at the close of the trial phase after the jury had departed and at a hearing the following day. During the trial court's colloquy with appellant, the specific term "aggravating circumstances" was not mentioned. Yet, the trial court nevertheless stated the requisite effect: "Mitigating factors are also factors about an individual or an offense which weigh in favor of a decision that a life sentence is the appropriate sentence."

{¶ 76} Appellant signed the written waiver set forth above in open court that recited all of the *Ashworth* requirements for a knowing, voluntary, and intelligent waiver of the presentation of mitigating evidence. To the extent that the fourth *Ashworth* requirement may not have been complied with initially, the waiver specifically satisfied that requirement.

{¶ 77} Contrary to appellant's arguments, we find that the trial court acted properly in its inquiry and acceptance of his waiver of presentation of mitigating evidence. Nothing in the record suggests that appellant was incompetent to waive mitigation. Moreover, neither of appellant's advisory counsel raised any issue or doubts concerning appellant's competence to waive presentation of mitigating evidence.

{¶ 78} This court will ordinarily affirm "factual determinations [, which] are best left to those who see and hear what goes on in the courtroom." *Cowans,* 87 Ohio St.3d at 84, 717 N.E.2d 298. Appellant's signed waiver of rights confirms the propriety of the waiver. In the context of a waiver of *Miranda* rights, a defendant's signed waiver is strong proof that such a waiver is valid. See *State v.*

*Clark* (1988), 38 Ohio St.3d 252, 261, 527 N.E.2d 844; *North Carolina v. Butler* (1979), 441 U.S. 369, 374–375, 99 S.Ct. 1755, 60 L.Ed.2d 286. That same reasoning applies here as well.

{¶ 79} In addition, appellant is incorrect in asserting that the court erred in failing to inform him that if he presented no mitigation, the only lawful jury verdict would be death. Ohio law provides that the jury is required to consider as possible mitigating factors the nature and circumstances of the offense; the history, character, and background of the defendant; and any other factors that call for a penalty less than death or that lessen the appropriateness of the death penalty. The trial court here did instruct the jury that it must consider these statutory mitigating factors before it retired to deliberate as was required under R.C. 2929.04(B).

{¶ 80} Moreover, the jury is not restricted to considering mitigating evidence presented in the penalty phase. Rather, the jury is required to consider "any evidence raised at trial that is relevant * * * to any factors in mitigation of the imposition of the sentence of death." R.C. 2929.03(D)(1).

{¶ 81} Based on the foregoing we reject appellant's second, third, and fourth propositions.

### B.   Duty of the Trial Court

{¶ 82} In his fifth proposition of law, appellant asserts that when a capital defendant chooses to waive presentation of mitigation evidence, the trial court should be required either to appoint counsel to investigate and present mitigation evidence or to engage in its own investigation and presentation of evidence. Appellant argues that Ohio should join other states that will not permit waiver of mitigation evidence regardless of the defendant's wishes. See, e.g., *State v. Koedatich* (1988), 112 N.J. 225, 548 A.2d 939.

{¶ 83} This court previously rejected the same arguments now made by appellant in *Tyler,* 50 Ohio St.3d at 29, 553 N.E.2d 576:

{¶ 84} "The same value that guarantees a defendant a right to present mitigating evidence—'the right of the defendant to be treated with dignity as a human being,' Bonnie, [The Dignity of the Condemned (1988), 74 Va.L.Rev. 1363,] at 1383—also gives him the right to decide what is in his own best interest. In our view, appellant's suggestion that the court call its own witnesses in mitigation or appoint an independent attorney to do so gives insufficient deference to that value."

{¶ 85} *Koedatich,* cited by appellant, relied on the California Supreme Court decision in *People v. Deere* (1985), 41 Cal.3d 353, 222 Cal.Rptr. 13, 710 P.2d 925, and was also noted by us in *Tyler,* 50 Ohio St.3d at 27, 553 N.E.2d 576. Both *Koedatich* and *Deere* held that allowing a capital defendant to waive presentation

of mitigation evidence defeats the state's interest in a reliable penalty determination. Yet this court noted in *Tyler* that *Deere* was repudiated several years later in *People v. Bloom*, 48 Cal.3d 1194, 259 Cal.Rptr. 669, 774 P.2d 698. Moreover, in *Tyler*, this court rejected the reasoning in *Koedatich* and *Deere*, and appellant advances no new compelling reasons for us to alter our view. Accordingly, we overrule appellant's fifth proposition.

## C.  Proportionality Review

{¶ 86} In his eighth proposition of law, appellant contends that the universe of cases to be examined for proportionality review must include all those cases in which a capital specification has been charged. However, proportionality review need entail only those cases in which the death sentence has been imposed. *State v. Steffen* (1987), 31 Ohio St.3d 111, 123–124, 31 OBR 273, 509 N.E.2d 383. Accord *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 23. Appellant's eighth proposition is summarily overruled.

## V.  Constitutionality

{¶ 87} In his ninth proposition of law, appellant asserts that Ohio's death penalty law is unconstitutional both in the abstract and as applied. However, we reject these arguments as well. See, e.g., *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph one of the syllabus; *State v. Zuern* (1987), 32 Ohio St.3d 56, 63, 512 N.E.2d 585; *State v. Carter* (1992), 64 Ohio St.3d 218, 227, 594 N.E.2d 595; *State v. Buell* (1986), 22 Ohio St.3d 124, 137, 22 OBR 203, 489 N.E.2d 795; *State v. Phillips* (1995), 74 Ohio St.3d 72, 103–104, 656 N.E.2d 643; *State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568, syllabus.

## VI.  Independent Review and Proportionality

{¶ 88} At the mitigation hearing, appellant presented no mitigating evidence.

{¶ 89} Upon independent assessment, we hold that the evidence proves beyond a reasonable doubt the aggravating circumstances in this case: that appellant murdered Thompson and Kowalczk while committing aggravated burglary, aggravated robbery, and as a course of conduct.

{¶ 90} The nature and circumstances of the offense offer nothing in mitigation. Appellant entered the home of Thompson and Kowalczk and bludgeoned both to death in their living room. He stole a double-elephant pendant from Thompson, had a friend pawn it, and used the proceeds to buy crack cocaine.

{¶ 91} Appellant's history, character, and background offer little in mitigation. Appellant represented himself during trial in a reasonable manner. He was cooperative and respectful to everyone during the entire proceedings. As the trial court pointed out, appellant appeared to be a very intelligent person.

{¶ 92} Although appellant presented no mitigating evidence, he did testify under oath during the trial. During his trial testimony, appellant claimed that he worked for Gertrude Thompson for four years. He denied killing either Thompson or Edward Kowalczk. He also considered Thompson to be his friend.

{¶ 93} During a pretrial hearing, appellant informed the court that he has a GED certificate and has completed one semester of college. He further indicated that he had no drug or alcohol problems. These aspects of appellant's background are worthy of some weight in mitigation.

{¶ 94} None of the statutory mitigating factors of R.C. 2929.04(B)(1) through (7) appears applicable, except perhaps the (B)(7) "catchall" factor. There was no evidence that either victim facilitated or provoked their murders. Nor was there evidence that appellant suffered a mental disease or defect. Appellant was in his 40s when the crimes took place, and he was incarcerated for other crimes in Texas when he was implicated in the murders. Although appellant asserted that Ethan Walls committed the crimes, and Walls had been a suspect early in the murder investigation, there was no substantial evidence that Walls was guilty.

{¶ 95} Upon independent weighing, we hold that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. By his own testimony, appellant admitted that he had worked for Gertrude Thompson and had worked around her house and the rental properties she owned. Having earned Thompson's trust, appellant burglarized and robbed Thompson and Kowalczk and savagely murdered them in their living room. Appellant then persuaded his friend, Gordy Candie, to pawn Thompson's pendant in Toledo several days before the murders were discovered. Appellant then split the proceeds with Candie and departed Toledo soon thereafter. Appellant's actions, reconstructed on strong, compelling circumstantial evidence, merit the capital penalty to which he was sentenced.

{¶ 96} The death penalty in this case is both appropriate and proportionate when compared with capital cases involving the purposeful killing or attempt to kill two or more persons, cases involving murder in connection with aggravated burglary, and cases involving murder in connection with aggravated robbery. See *Tyler*, 50 Ohio St.3d 24, 553 N.E.2d 576 (murder-robbery); *Cowans*, 87 Ohio St.3d 68, 717 N.E.2d 298 (murder-robbery-burglary); *Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72 (course of conduct); *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506 (course of conduct).

{¶ 97} For the foregoing reasons, we affirm appellant's convictions and death sentence.

Judgment affirmed.

234

Moyer, C.J., F.E. Sweeney, Pfeifer, Lundberg Stratton, O'Connor and O'Donnell, JJ., concur.

Julia Bates, Lucas County Prosecuting Attorney, and Craig T. Pearson, Assistant Prosecuting Attorney, for appellee.

Jeffrey M. Gamso and Ann Baronas, for appellant.