[Cite as *State v. Myers*, 2022-Ohio-4615.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                :

    Plaintiff-Appellee,      : CASE NO. 21CA3764

    v.                     :

MARVIN L. MYERS,          : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.    :

_____

APPEARANCES:

Craig Jaquith, Assistant State Public Defender, Columbus, Ohio, for appellant[1].

Jeffrey C. Marks, Ross County Prosecuting Attorney, and Pamela C. Wells, Assistant Prosecuting Attorney, Chillicothe, Ohio, for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:12-16-22
ABELE, J.

    **{¶1}** This is an appeal from a Ross County Common Pleas Court judgment of conviction and sentence. A jury found Marvin L. Myers, defendant below and appellant herein, guilty of (1) failure to comply with a signal of a police officer and caused a substantial risk of physical harm in violation of R.C. 2921.331, and (2) vehicular assault while driving under suspension in violation of

_____

[1] Different counsel represented appellant during the trial court proceedings.

R.C. 2903.08.  Both offenses are third-degree felonies.

{¶2} Appellant assigns one error for our review:

"MR. MYERS'S TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT. (AUG. 9, 2021, ARRAIGNMENT TR. 3; NOV. 16, 2021, JOURNAL ENTRY; NOV. 30, 2021, MOTION HEARING TR. 2-6)."

{¶3} In August 2021, a Ross County Grand Jury returned an indictment that charged appellant with one count of fleeing and eluding and one count of vehicular assault.  At his August 9, 2021 arraignment, appellee also pointed to appellant's current community control sanction that stemmed from his 2019 convictions for two counts of aggravated possession of drugs.  Appellant entered not guilty pleas to the two new charges.

{¶4} On November 15, 2021, appellant filed a pro se handwritten petition for writ of habeas corpus that asserted a speedy trial violation.  On November 16, 2021, the trial court denied the motion, ordered it stricken from the record and noted that, because appellant had legal representation in the case at bar, he had no right to hybrid representation and could not file pro se motions or engage in self-representation.

{¶5} On November 30, 2021, a two-day jury trial commenced.  On the morning of trial, appellant requested a continuance in order to "retain private counsel."  The trial court, however, denied the motion and indicated "[t]his matter has been set.  You had ample time to hire private counsel.  The attorney [appellant sought to

hire], when consulted, has not spoken to you and is not familiar with this case.  So, this is going to proceed to trial."  Defense counsel stated that appellant wished to preserve his speedy trial rights and further explained the desire for a speedy trial is the reason why counsel did not file a motion to suppress evidence.  The court responded, "the court is aware that Mr. Myers was very keen to preserve his speedy trial rights, as he filed his own motion seeking to dismiss this matter," "alleging speedy trial violations."  The court stated its belief that both "motions were meritless based on the actual time passed and secondarily, the court denied those as Ohio does not allow dual representation with somebody who is represented."  The state also wanted to include in the record the fact that appellant rejected the state's offer of a four-year prison sentence.

**{¶6}**  At trial, Ohio State Highway Patrol Trooper Joshua McCarty testified that at 3:00 a.m. on September 19, 2020 he observed a black Acura travel south on U.S. 23 at 65 m.p.h. in a 60 m.p.h. speed zone.  McCarty followed the Acura, which changed lanes without a signal and turned onto another road at the "last possible second."  Because McCarty could not safely follow the Acura, he notified Trooper Tyler Boetcher.  Appellant, however, continued to evade police, made several turns and eventually drove into a field.  Boetcher initially advised McCarty to use stop-sticks, but McCarty said he would not have time to deploy the sticks because the Acura

re-entered the roadway and drove toward McCarty, who activated lights and siren.  McCarty testified that appellant then drove approximately 100 m.p.h. in a 55 m.p.h. zone.  Boetcher also followed the Acura with lights and siren activated.  When McCarty arrived at appellant's crash, he found appellant on the ground, partially in the driver's side door area, and two passengers, a male in the back seat and a female in front.

{¶7}  Trooper Boetcher testified that he heard the request for backup around 3:00 a.m., then caught up to appellant to initiate a traffic stop.  At that point, appellant "began rapidly accelerating" and Boetcher activated his lights and siren and notified other officers.  During pursuit, appellant failed to stop at three stop signs and Boetcher observed an "unknown object" (never recovered) come from appellant's driver's window.  Boetcher asked Trooper McCarty to utilize stop-sticks, but McCarty instead had to quickly exit the road to avoid appellant's vehicle.  Appellant's speed increased to "well over 100 m.p.h.," and later "above 130 m.p.h.."  When appellant's vehicle left the road, he lost control, re-entered the road, struck a sheriff's vehicle and "spun that Sheriff's cruiser around completely, 180 degrees."  Appellant continued to drive into oncoming lanes, then drove in the median where his vehicle stopped near the sheriff's vehicle.  When Boetcher observed appellant exit the vehicle, appellant admitted he operated the Acura.

{¶8} Subsequently, Trooper Boetcher and Trooper McCarty "began attending" to appellant, who said his leg had been "ripped off." When Boetcher advised appellant of his Miranda rights and asked why he fled, appellant stated, "he was not going back to prison, because he had warrants."

{¶9} Ross County Sheriff's Deputy Brenton Davidson also responded to assist with the pursuit. Davidson observed appellant "traveling at a very high rate of speed," cross the rumble strip on the right side of the road, overcorrect, then "ended up crashing into my vehicle." After Davidson's vehicle spun from the impact and airbags deployed, Davidson crawled away from his vehicle, in "a great deal of pain in several different parts of my body." Davidson suffered an abdominal tear, a torn labrum in his right hip, and a torn labrum in his left shoulder. Davidson later required shoulder surgery, lost the use of his arm for six weeks, experienced pain, received physical therapy, and may require additional surgeries.

{¶10} At the close of the state's case, defense counsel made a Crim.R. 29 motion for judgment of acquittal and argued that no evidence established that appellant drove the vehicle, other than officers observed him outside the vehicle's driver's side. The trial court, however, pointed out that Trooper Boetcher testified that he observed appellant exit the driver's seat, that other witnesses observed appellant just outside of the driver's seat, and

in the video shown to the jury appellant admitted that he drove the vehicle. Thus, the court denied the motion.

{¶11} After hearing the evidence and counsels' arguments, the jury found appellant guilty as charged in the indictment. The trial court (1) sentenced appellant to serve a 36-month prison term for failure to comply, (2) sentenced appellant to serve a five-year mandatory-term for vehicular assault, (3) ordered counts one and two to be served consecutively pursuant to R.C. 2921.331(D), (4) ordered a lifetime driver's license suspension, and (5) sentenced appellant to serve a discretionary two-year post-release control term. This appeal followed.

{¶12} In his sole assignment of error, appellant asserts that he received ineffective assistance of trial counsel because his counsel did not request a competency evaluation.

{¶13} The Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution, provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish deficient performance, a defendant must prove that counsel's performance fell below an

objective level of reasonable representation.  *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. Additionally, a court need not analyze both Strickland test prongs if it can resolve the claim under one prong*.  See State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000); *State v. Bowling*, 4th Dist. Jackson No. 19CA2, 2020-Ohio-813, ¶ 12-13.

{¶14} Furthermore, when a court examines whether counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689, 466 U.S. 668, 104 S.Ct. 2052.  Moreover, because a properly licensed attorney is presumed to execute all duties ethically and competently, *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, to establish ineffectiveness, a defendant must demonstrate that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland* at 687, 466 U.S. 668, 104 S.Ct. 2052.

{¶15} Appellant points out that in a prior case in the same court (Case No. 19CR000293), the trial court initially found appellant incompetent to stand trial.  Appellant argues that, although his incompetency finding in Case No. 19CR000293 may have predated his indictment in the case at bar, this court may take

judicial notice in the proceedings in the other case.[2]

{¶16} "It has long been recognized that 'a person [who] lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.' " *State v. Smith*, 89 Ohio St.3d 323, 329, 731 N.E.2d 645 (2000), quoting *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *State v. Thomas,* 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, ¶ 35. Thus, due process requires that an incompetent criminal defendant may not be tried. *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995).

{¶17} Criminal defendants are rebuttably presumed to be competent to stand trial. *State v. Barton*, 108 Ohio St.3d 402, 2006-Ohio-1324, 844 N.E.2d 307, ¶ 56, citing R.C. 2945.37(G). Pursuant to R.C. 2945.37(G), a defendant is incompetent to stand trial if he or she "is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense * * *." Because a defendant is presumed competent to stand trial, it is the defendant's burden to prove, by a preponderance of the evidence, that he is not competent. *State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 28;

---

[2] However, after appellant's months-long civil commitment to a psychiatric facility, he had been restored to competence on July 28, 2021, nine days before the indictment in the present case.

R.C. 2945.37(G).

{¶18} The test to determine whether a defendant is competent to stand trial is (1) the sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding, and (2) the rational and factual understanding of the proceedings *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 32, citing *Berry*, 72 Ohio St.3d at 359, 650 N.E.2d 433 and *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Thus, a person who "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense" may not stand trial. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 155. Objective indications such as medical reports, defense counsel's specific references to irrational behavior, or a defendant's demeanor during trial are all relevant in determining whether good cause was shown after the trial had begun. *State v. Chapin* (1981), 67 Ohio St.2d 437, 21 O.O.3d 273, 424 N.E.2d 317, paragraph one of the syllabus; *Thomas* at ¶ 37.

{¶19} In the case sub judice, appellant asserts that several matters in the record called appellant's competency into question. First, appellant argues that because in a previous case he had been found incompetent (before this indictment), this fact should impact his competency in the present case. However, the competency statute, R.C. 2945.37(G), provides that a finding of incompetency

must be based upon a preponderance of the evidence demonstrating that, due to the defendant's *present* mental condition, the defendant is incapable of understanding the nature and objective of the criminal proceedings and is incapable of assisting in the defense.

{¶20} Appellant cites *State v. Alvarado*, 4th Dist. Ross No. 14CA3423, 2014-Ohio-5374, ¶ 9 in support of his argument that the fact that appellant had been restored to competence in late July 2021 should be "of little import." In *Alvarado*, the trial court recounted in its entry that previous reports found the defendant competent and considered defense counsel's opinion that the defendant exhibited signs of extreme paranoia and delusional thinking, but nevertheless determined that counsel's untrained evaluation alone was insufficient to require a third evaluation. *Id.* at ¶ 1. This court held:

> Even if we accept defense counsel's untrained opinion that Alvarado was exhibiting signs of paranoia and delusional thinking, the Supreme Court of Ohio has consistently held " '[i]ncompetency must not be equated with mere mental or emotional instability or even with outright insanity' " and " '[a] defendant may be emotionally disturbed or even psychotic and still capable of understanding the charges against him and of assisting his counsel.' " *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 48, quoting *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986). Moreover, in *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, the Supreme Court of Ohio held that a trial court did not abuse its discretion by denying a defendant's request for a competency evaluation when the only evidence presented by counsel was his unsupported assertion of the defendant's expected diagnosis of "paranoid personality disorder [and]

reality contact problems." *Johnson* at ¶ 163-164.

*Alvarado* at ¶ 12. Although this court observed that competency is

"fluid," we also concluded:

> Although he advised the court that he was not "well in my mind," that it was "very hard to concentrate in the words that you are saying to me," and that he had "mental problems," there was no outburst or other evidence supporting his counsel's statements of him experiencing hallucinations, paranoia, or delusional thinking. And the record does not indicate that there was anything in Alvarado's demeanor indicating that his mental status had decreased to the point where a third competency evaluation in less than a year was required.

*Alvarado* at ¶ 15.

**{¶21}** In the case sub judice, other than appellant's previous

competency finding, we find no evidence regarding diagnoses,

medication, outbursts, demeanor or any other evidence of mental

incapacity to show that appellant was incapable of understanding

the nature and objective of the proceedings or could not assist in

his defense. Pursuant to R.C. 2945.37(G), his previous finding of

incompetency had no impact on appellant's "present mental

condition."

**{¶22}** Second, appellant points out that during the trial court

proceedings he "inexplicably rejected a plea offer" that the trial

court deemed "very generous." However, the Supreme Court of Ohio

in *State v. Lawson,* 165 Ohio St.3d 445, 2021-Ohio-3566, 179 N.E.3d

1216, held*:*

> We have noted that a defendant's 'refusal to heed his counsel's advice * * * [does] not indicate that he was unable to understand the nature of the charges and proceedings or the gravity of the situation or that he could not assist in his defense.' *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 161. Indeed, such a refusal generally 'evidences [the defendant's] ability to participate in his defense. *State v. Fletcher*, 8th Dist. Cuyahoga No. 49814, 1985 WL 4215, *2 (Dec. 5, 1985).

*Id.* at ¶ 54. Unfortunately, it is not uncommon for criminal defendants to ignore counsel's sound advice and recommendations even when it may be in their best interest to follow that advice and recommendation.

**{¶23}** Third, appellant points to his November 2021 pro se request for a speedy trial dismissal that the trial court struck because appellant had legal representation. Appellant contends that this request also demonstrates that he did not understand the speedy-trial statute, or "realize that he was not being held solely on the instant case; he was also completing the 18-month sentence that had been imposed only four months prior in the 2019 case, which sentence did not expire until March 2, 2022."

**{¶24}** "It is well-established that although a defendant has the right to counsel or the right to act pro se, a defendant does not have any right to 'hybrid representation.' " *State v. James*, 4th Dist. Ross No. 13CA3393, 2014-Ohio-1702, ¶ 12; quoting *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, paragraph one of the syllabus; see also *State v. Thompson*, 33 Ohio

St.3d 1, 6-7, 514 N.E.2d 407 (1987). Thus, the trial court's dismissal of appellant's pro se request is obviously within the court's discretion. *See also State v. Lamb*, 2018-Ohio-1405, 110 N.E.3d 564 (4th Dist.). Moreover, a defendant's misunderstanding of the intricacies and implications of the speedy trial statute, especially under the circumstances present in the case at bar, does not call into question appellant's competence. In some circumstances that involve multiple offenses, speedy trial computations can involve very complex questions and issues.

{¶25} Fourth, appellant contends that his instruction to trial counsel not to pursue a suppression motion because of his concern about the speedy-trial clock also calls his competence into question. On the morning of trial, when trial counsel attempted to make a motion in limine regarding appellant's statement about why he fled the scene, the trial court pointed out that appellant did not file a written suppression motion. However, as the state points out, the transcript shows that appellant discussed this issue with counsel and counsel stated on the record that appellant was "very interested in preserving his speedy trial [rights]," to which the trial court replied, "Mr. Myers was very keen to preserve his speedy trial rights," and pointed to appellant's pro se motion. Furthermore, and as the state points out, a motion to suppress evidence would not have affected the outcome of this case because overwhelming evidence, including multiple eyewitnesses and video

evidence, established appellant's commission of the offenses.

{¶26} Finally, appellant asserts that his desire to seek new counsel on the morning of trial is further evidence that should raise the issue of appellant's competence. However, as appellee argues, a last-minute attempt to request a continuance to obtain different counsel is a common occurrence and does not establish that a defendant may lack the competence to participate in the proceeding. Appellant cites no authority to support appellant's argument that his request for new counsel is necessarily an indicia of incompetence.

{¶27} Furthermore, we point out that no expert or lay opinion offered during the trial court proceeding questioned appellant's competence. Defense counsel represented appellant, both in a previous case and in the instant case, and did not suggest to the court that she observed any indicia of appellant's incompetence. *See Smith*, 89 Ohio St.3d at 330, 731 N.E.2d 645 ("[i]f counsel had some reason to question Smith's competence, they surely would have done so.") Also, neither the trial court nor the prosecutor expressed any concern on the record regarding appellant's behavior. *See State v. Hough*, 10th Dist. Franklin No. 19AP-682, 2021-Ohio-2198.

{¶28} After our review in the case at bar, we conclude that the record fails to indicate that appellant exhibited difficulty understanding the proceedings or may not have been capable of

assisting counsel in his defense.  Instead, the record shows that appellant had been restored to competency four months before his trial and that he did participate in his defense, and notably expressed concern about his speedy trial rights.  In general, defense counsel should not be deemed to have performed ineffectively if counsel did not request a competency evaluation when a defendant does not demonstrate sufficient indicia of incompetency to warrant a competency hearing.  *Thomas* at ¶ 41. Consequently, if a defendant did not display sufficient indicia of incompetency to warrant a competency hearing, *see Smith*, 89 Ohio St.3d. at 334, 731 N.E.2d 645, counsel's failure to request a competency hearing does not constitute deficient performance.

**{¶29}** Therefore, after our review in the case at bar we conclude that appellant was not deprived of his right to effective assistance of counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.  Accordingly, based upon the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.