[Cite as *State v. Fulcher*, 2024-Ohio-1609.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-31 |
| | : | |
| v. | : | Trial Court Case No. 2021CR0209 |
| | : | |
| RONALD D. FULCHER JR. | : | (Criminal Appeal from Common Pleas Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 26, 2024

. . . . . . . . . . .

APRIL F. CAMPBELL, Attorney for Appellant

MEGAN A. HAMMOND, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Ronald D. Fulcher, Jr., appeals from his conviction and sentence, which followed his no contest plea to one count of marijuana possession in an amount equal to or exceeding one thousand grams but less than five thousand grams. According to Fulcher, his conviction and penalty must be vacated because R.C. Chap. 3780, the Adult Use Cannabis Control statute "(AUCC"), is retroactive. That statute,

which was codified after Ohio voters passed an initiative petition, allows marijuana to be legally possessed in some situations.

{¶ 2} Fulcher further argues that trial counsel was ineffective in failing to seek suppression of Fulcher's statements to police and his consent to a search of his property. In addition, Fulcher contends the trial court should have suppressed evidence due to the police's unlawful entrance into his home. Finally, Fulcher argues that his conviction should be vacated because the trial judge who ruled on the suppression motion later recused himself.

{¶ 3} After reviewing the record, we find no merit to Fulcher's arguments. Accordingly, the trial court's judgment will be affirmed.


I.   Facts and Course of Proceedings

{¶ 4} On April 9, 2021, an indictment was filed in the trial court charging Fulcher with one count of illegal cultivation of marijuana in violation of R.C. 2925.04(A) and one count of possession of marijuana in violation of R.C. 2925.11(A). Both charges were third-degree felonies, and the alleged violations took place on September 2, 2020.

{¶ 5} Prior to entering a plea, Fulcher filed a pro se motion to dismiss the charges. Before the State responded to that motion, Fulcher was arraigned and entered a not guilty plea. Fulcher then filed two pro se motions to suppress on May 10, 2021. After the State responded to the initial pro se motion, the trial court filed an entry on May 14, 2021, stating that it would not consider Fulcher's multiple pro se motions because Fulcher was represented by counsel.

{¶ 6} Fulcher's appointed counsel then filed a motion to suppress on July 8, 2021, challenging the search of Fulcher's property. The basis was that the police allegedly were operating a surveillance helicopter outside navigable air space and into the property, where Fulcher had a reasonable expectation of privacy. The suppression hearing was held on November 10, 2021, at which time the court heard testimony from the following individuals: Greene County Sheriff's Department Deputy James Hughes; Dwight Aspacher, a retired employee of the Bureau of Criminal Investigation ("BCI"); and Fulcher's brother, Robert. At that point, Fulcher was represented by new counsel, who had been involved in the case since at least late September 2021.

{¶ 7} After hearing the testimony, the trial court overruled the suppression motion. The court found that the helicopter used in the drug eradication program had been operated at a legal altitude and in a publicly navigable space when Aspacher (a spotter with BCI) observed marijuana plants on Fulcher's property. Therefore, no Fourth Amendment violation occurred. Judgment Entry Denying Motion to Suppress (Dec. 29, 2021), p. 1-5.

{¶ 8} In February 2022, Fulcher's counsel filed an application asking the court to appoint psychiatrists to examine Fulcher's competency. At that time, Fulcher withdrew his not guilty plea and tendered a plea of not guilty and written suggestion of incompetency. On February 23, 2022, the trial court ordered an evaluation of Fulcher's competency by Forensic Psychiatry Center for Western Ohio and ordered the report to be submitted by April 22, 2022. Subsequently, on March 22, 2022, Fulcher's attorney filed a motion to withdraw as counsel due to a breakdown in communications. On April

19, 2022, the court set an April 27 competency hearing. Before that hearing occurred, however, Fulcher filed a pro se motion seeking the trial judge's recusal.

{¶ 9} After holding the competency hearing, the court filed an entry finding Fulcher competent to stand trial. The court noted that it had received a report stating Fulcher was competent to stand trial, and both the State and defense had stipulated to the report. Judgment Entry (Finding of Competency to Stand Trial) (Apr. 27, 2022), p. 1. *See also* Transcript of Competency Hearing (Apr. 27, 2022) ("Comp. Tr."), 5.

{¶ 10} On May 11, 2022, the judge presiding over the case recused himself and asked for appointment of a visiting judge. Judgment Entry (May 11, 2022), p. 1. A hearing on counsel's motion to withdraw was scheduled for June 7, 2022, but Fulcher failed to appear. The newly-appointed judge rescheduled the hearing for July 11, 2022, ordered the clerk of courts to advise Fulcher of the hearing date by certified mail, and warned Fulcher that if he failed to appear, a capias for his arrest would likely be issued. Entry and Order (June 13, 2022).

{¶ 11} During the July 11 hearing, the court granted defense counsel's motion to withdraw. Transcript Motion to Withdraw ("With. Tr."), 8. The court also conducted a thorough discussion with Fulcher about his rights and the issue of self-representation, after which Fulcher signed a waiver of counsel. The court then found Fulcher knowingly, intelligently, competently, and voluntarily desired to waive his right to representation and had elected to represent himself. *Id.* at 9-32 and 35-36. Fulcher's written waiver and the entry granting the motion to withdraw were filed the same day.

{¶ 12} On August 24, 2022, Fulcher filed a second motion to dismiss the charges.

Over the next several months, the court held various hearings on Fulcher's request to have the marijuana retested (which the court had granted) and how that might be arranged. On January 13, 2023, the court set an April 10, 2023 date for a jury trial. Subsequently, the court overruled Fulcher's second motion to dismiss. Order (Jan. 20, 2023). On April 10, 2023, the State filed a motion in limine asking the court to bar testimony about the legality of the helicopter search. According to the State, this issue had no relevance to the charges, which were cultivation and possession of marijuana.

{¶ 13} Prior to bringing in the jury, the court informed Fulcher that it intended to sustain the motion in limine. Transcript of Jury Trial/Plea ("Plea Tr."), 3 and 5-7. At this time, Fulcher informed the court that he was not going to present testimony of a witness from a laboratory in Kentucky that had tested the marijuana. The court then said that the laboratory report would not be entered into evidence and Fulcher would not be allowed to mention it. *Id.* at 3-4.

{¶ 14} Following the above discussion, Fulcher elected to plead no contest to possession of marijuana in an amount exceeding 1,000 grams and less than 5,000 grams, as charged in the indictment, and the court then conducted a Crim.R. 11(C) colloquy. *Id.* at 9, 11-12, and 13-26. The parties agreed that the cultivation charge would be dismissed. *Id.* at 19. After Fulcher signed the plea and waiver form, the court found he had knowingly, intelligently, and voluntarily waived his constitutional rights. *Id.* at 27. The court then accepted the plea, found Fulcher guilty, ordered a presentence investigation report ("PSI"), and set a date for sentencing. The plea form and entry as well as the order accepting the plea and finding Fulcher guilty were filed the same day.

{¶ 15} Prior to sentencing, Fulcher's probation officer filed a motion regarding violation of bond, indicating that Fulcher had tested positive for illicit drug use and that Fulcher had admitted it. The court filed an entry finding Fulcher had violated his bond and continued the previously established bond. Entry (Violation of Bond) (Apr. 25, 2023). At the sentencing hearing on May 18, 2023, the court sentenced Fulcher to community control, to a jail term of six months, and to the Greene Leaf Program and Aftercare Program, with the latter two sanctions being held in abeyance. Transcript of Final Disposition (May 18, 2023), 4-5. A judgment was then filed the same day. *See* Judgment Entry (Community Controls). Fulcher timely appealed from the judgment, and counsel was appointed for his appeal.

## II. Retroactivity

{¶ 16} Fulcher's first assignment of error states that:

Fulcher's Conviction and Penalty Must Be Vacated Because R.C. 3780 Is a Retroactive Statute.

{¶ 17} Under this assignment of error, Fulcher contends that his conviction and sentence should be vacated because the AUCC, codified in R.C. Chap. 3780, is retroactive. This statutory scheme resulted from an initiative petition of Ohio voters and became effective on December 7, 2023, more than three years after Fulcher committed illegal possession and cultivation of marijuana and more than two years after he was charged. As support for his claim that the statutory scheme applies retroactively, Fulcher has specifically relied on two statutes: R.C. 3780.03 and R.C. 3780.36.

{¶ 18} Analyzing the prohibition of retroactive laws begins with R.C. 1.48, which says that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." The second provision prohibiting retroactive application "is a rule of constitutional limitation, imposed in Section 28, Article II of the Ohio Constitution: 'The general assembly shall have no power to pass retroactive laws * * *.' " *Hyle v. Porter*, 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899, ¶ 7.

{¶ 19} In this context, the Supreme Court of Ohio uses a two-part test to decide if statutes may be applied retroactively: (1) "whether the General Assembly expressly made the statute retroactive"; and (2) if so, "whether the statutory restriction is substantive or remedial in nature." *Id.* at ¶ 8, citing *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 10. Unless the court decides the General Assembly "expressly made the statute retroactive," it does "not address the question of constitutional retroactivity." *Id.* at ¶ 10, citing *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 106, 522 N.E.2d 489 (1988), *superseded by statute on other grounds as stated in Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 484, 696 N.E.2d 1044 (1998).

{¶ 20} The current situation differs somewhat because the General Assembly did not enact the AUCC; instead, it was adopted through an initiative petition that Ohio voters passed. Under Ohio Constitution, Article II, Section 1, "the people reserve to themselves the power to propose to the General Assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote as hereinafter provided." Ohio Constitution, Article II, Section 1b further provides a process to be followed where Ohio citizens file initiative petitions.

{¶ 21} As relevant here, the full text of the proposed law is submitted to the General Assembly. If the General Assembly fails to take action within a specified time, the law is submitted to the electorate for approval or rejection, if other requirements have been met. *Id.* "if a proposed law so submitted is approved by a majority of the electors voting thereon, it shall be the law and shall go into effect as herein provided * * *. * * * Any proposed law or amendment to the constitution submitted to the electors as provided in 1a and 1b, if approved by a majority of the electors voting thereon, shall take effect thirty days after the election at which it was approved and shall be published by the secretary of state. * * * No law proposed by initiative petition and approved by the electors shall be subject to the veto of the governor."

{¶ 22} In view of the above procedure, the General Assembly had no impact on the AUCC or its text once it failed to act on the initiative petition. Logically, however, the two-part test should still apply, i.e., the first consideration would be whether the statutory scheme was expressly made retroactive.

{¶ 23} The first statute Fulcher cites, R.C. 3780.03, establishes "a division of cannabis control ("DCC") within the department of commerce." R.C. 3780.03(A). This statute gives DCC various oversight and control powers over the adult use cannabis industry and allows DCC to make rules on various related matters. *See* R.C. 3780.03(B) and (C)(1)-(22). Nothing in this statute makes any comment about retroactivity.

{¶ 24} The other statute, R.C. 3780.36, contains limitations on individual conduct. As pertinent here, subdivision (A) states that:

> Except as otherwise provided in this chapter and notwithstanding

any conflicting provision of the Revised Code, an adult use consumer, may do the following:

* * *

(2) Possess, transfer without remuneration to another adult consumer, or transport adult use cannabis, subject to division (B) of this section.

{¶ 25} R.C. 3780.36(B)(1)(a) and (b) limit possession of adult use cannabis to amounts not exceeding: "Two and one-half ounces of adult use cannabis in any form except adult use extract"; and "Fifteen grams of adult use cannabis in the form of adult use extract." R.C. 3780.36(C) further states, in pertinent part, "Except as otherwise provided in this chapter, an adult use consumer shall not be subject to arrest, criminal prosecution, or civil penalty for engaging in any of the activities authorized under this chapter, including: (1) Obtaining, using, possessing, or transporting adult use cannabis." Nothing in this statute expressly (or even implicitly) says anything about retroactivity.

{¶ 26} According to evidence at the suppression hearing, Fulcher had two marijuana plants growing outside on his property that were visible from a public space, i.e., airspace. Suppression Transcript ("Supp. Tr."), 16, 18, 25, 29-31, 48-49, 54, and 56-57. In the trial court, Fulcher asserted that he was growing the plants for his own use (and that, in any event, he was growing hemp, not marijuana). In this regard, R.C. 3780.29(A)(1) allows adult use consumers to cultivate, grow, or possess no more than six cannabis plants for home use, with certain restrictions. One restriction is that cultivation can only take place "within a secured closet, room, greenhouse, or other

enclosed area in or on the grounds of the residence that prevents access by individuals less than twenty-one years of age, and which is not visible by normal unaided vision from a public space." R.C. 3780.29(A)(1)(b). As with the other statutes, there is no express provision for retroactive application. In fact, no statute in R.C. Chap. 3780 contains any reference to retrospective or retroactive application.

{¶ 27} Given the lack of any express statutory statement that the AUCC applies retroactively, we need not consider whether the law is substantive or remedial. The AUCC was not intended to decriminalize conduct that occurred prior to December 7, 2023, when it became effective. Moreover, even if this were otherwise, it would not aid Fulcher, because his plants were being grown outside, in an unsecured area, and were visible by normal unaided vision in a public space, i.e., airspace.

{¶ 28} Based on the preceding discussion, the first assignment of error is overruled.

### III. Ineffective Assistance of Counsel

{¶ 29} Fulcher's second assignment of error states as follows:

Fulcher's Conviction Must Be Reversed Because His Trial Counsel Was Ineffective for Failing to Argue That Fulcher's Statements and Subsequent Consent to Search Should Have Been Suppressed Under the Fourth Amendment, *Miranda*, and the Fruit of the Poisonous Tree Doctrine.

{¶ 30} Under this assignment of error, Fulcher claims his trial counsel rendered ineffective assistance by failing to file a motion to suppress based on the fact that a police

officer entered Fulcher's home without permission and then obtained incriminating statements after receiving consent to search. Fulcher's Brief, p. 7-8.

{¶ 31} In response, the State contends that by pleading guilty, Fulcher waived his right to allege ineffective assistance of counsel, other than with respect to whether his guilty plea was voluntary. State's Brief, p. 4. The State further asserts that the plea, in fact, was voluntary. *Id.* at p. 4-5.

{¶ 32} As a preliminary point, the State is incorrect with respect to the plea. The record indicates that Fulcher pled no contest to the possession charge. At one point during the plea hearing, the trial court mistakenly referenced it as a "guilty" plea. Plea Tr. at p. 27. However, the rest of the plea transcript indicates clearly that Fulcher pled no contest to the possession charge. *Id.* at 26. Furthermore, the plea agreement and waiver and the plea entry filed the same day clearly state that Fulcher's plea was no contest. The sentencing entry also refers to a "no contest" plea. Judgment Entry (May 18, 2023), p. 1. Despite taking this position, the State did go on to address the merits of Fulcher's claim, arguing that *Miranda* warnings only need to be given when a defendant is in custody. However, the State stresses that Fulcher is not asserting that he was in custody.

{¶ 33} As noted, Fulcher pled no contest and is not precluded from asserting any error other than the voluntary nature of a guilty plea. However, there is an issue concerning whether Fulcher's waiver of his right to counsel precludes him from raising ineffective assistance of counsel.

{¶ 34} The Sixth and Fourteenth Amendments "guarantee a state criminal

defendant the constitutional right of self-representation when the defendant voluntarily, knowingly, and intelligently so elects." *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 45, citing *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), paragraph one of the syllabus. Therefore, defendants can choose not to have counsel and by doing so, they waive the right to assert claims of ineffective assistance of counsel. This is because "the right to effective assistance of counsel necessarily presumes that the defendant has counsel," and "[t]he law pertaining to effective assistance of counsel does not apply when the defendant exercises his right to self-representation." *Id*. at ¶ 82. *Accord State v. Roberts*, 9th Dist. Summit No. 30201, 2022-Ohio-3717, ¶ 6; *State v. Ealy*, 5th Dist. Licking No. 16-CA-31, 2016-Ohio-7927, ¶ 15; *State v. Adams*, 7th Dist. Mahoning No. 14 MA 0077, 2016-Ohio-891, ¶ 28; *State v. Rivers*, 2023-Ohio-3533, 225 N.E.3d 1110, ¶ 61 (11th Dist.).

{¶ 35} "A timely request to waive counsel and self-represent must be granted 'when [a defendant] voluntarily, and knowingly and intelligently elects to do so.' " *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶ 47, quoting *Gibson* at paragraph one of the syllabus. "However, the right to represent oneself is not unlimited. For instance, before permitting self-representation, the trial court must ensure that a defendant is 'aware of the dangers and disadvantages of self-representation' so that ' " 'he knows what he is doing and his choice is made with eyes open.' " ' " *Id.*, quoting *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). (Other citation omitted.) "Requiring that a request for self-representation be both unequivocal and explicit helps to ensure that a defendant will not 'tak[e] advantage of and

manipulat[e] the mutual exclusivity of the rights to counsel and self-representation.' " *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 29, quoting *United States v. Frazier-El,* 204 F.3d 553, 559 (4th Cir.2000).

**{¶ 36}** In the case before us, during the July 11, 2022 hearing on withdrawal of counsel and Fulcher's request to represent himself, the trial court conducted a thorough discussion of the rights Fulcher would be waiving.   During this discussion, the court repeatedly warned Fulcher about the dangers of representing himself and strongly urged him not to do so.   With. Tr. at 11-12, 14-15, 16, 22, 23, 24, and 28-29.   The court also told Fulcher that if he represented himself, he would give up the right to later claim that he had received ineffective assistance of counsel; Fulcher said he understood this.   *Id.* at 15-16.   In addition, the court explained what stand-by counsel does and asked Fulcher if he would like such counsel appointed.   However, Fulcher declined.   *Id.* at 31-32. Consequently, there is no question here about whether Fulcher's request to represent himself was handled appropriately.   In general, that would preclude him from asserting ineffective assistance of counsel on appeal.

**{¶ 37}** However, even in this situation, courts have still let defendants claim ineffective assistance of counsel in connection with events that occurred before the self-representation election was made.   *See State v. Doyle*, 4th Dist. Pickaway No. 04CA23, 2005-Ohio-4072, ¶ 21 (considering claim); *State v. Gales*, 9th Dist. Summit No. 29316, 2022-Ohio-776, ¶ 17 (assuming without deciding that ineffective assistance claim was properly before the court of appeals, but finding claim without merit); *State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 31 (in death penalty case, court

considered ineffective assistance of counsel allegedly occurring before defendant waived counsel).

**{¶ 38}** In view of the above authority, we can consider the claim that trial counsel acted ineffectively before Fulcher's self-representation election. Again, this would involve counsel's failure to challenge the police's alleged entrance into Fulcher's home and the fact that the police allegedly obtained incriminating statements after Fulcher consented to a search.

**{¶ 39}** "The right to effective assistance of counsel is rooted in the Sixth and Fourteenth Amendments." *Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, at ¶ 81, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 1984, and *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To succeed on ineffective-assistance claims, a defendant must establish: (1) trial counsel's deficient performance; and (2) the deficient performance caused prejudice. *Strickland* at 687; *Bradley* at paragraph two of the syllabus.

**{¶ 40}** In order to prove deficient performance, a defendant must show that "counsel's performance fell below an objective standard of reasonable representation." *Strickland* at 688. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge

or jury acted according to law."  *Id.*

{¶ 41} In the case before us, the police were involved in a drug eradication program using a helicopter and spotted marijuana growing on Fulcher's property. Officers on the ground then went to Fulcher's home, where they obtained his consent to search the property.

{¶ 42} "When police conduct a warrantless search, the state bears the burden of establishing the validity of the search.   Searches and seizures without a warrant are '*per se* unreasonable' except in a few well-defined and carefully circumscribed instances." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 98, quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 454-455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).  "It is equally well established, however, that a search of property without a warrant or probable cause but with proper consent having been voluntarily obtained does not violate the Fourth Amendment."  *Id.*, citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 249, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).  "The question of whether consent to a search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances."  *Id.* at ¶ 99, citing *Schneckloth* at 227.   "The standard for measuring the scope of consent under the Fourth Amendment is objective reasonableness, i.e., what a typical reasonable person would have understood by the exchange between the officer and the suspect."  *Id.*, citing *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).

{¶ 43} Having reviewed the entire video of the interaction between the police and Fulcher, we find no evidence of coercion or duress, either express or implied.   The total

interaction lasted a very brief time (only around 15 minutes) and was very cordial. When Deputy Hughes arrived at the property, Fulcher's brother, Robert, was outside. After learning that Robert did not live there and that Fulcher did, a detective asked Robert if he would mind going with Hughes to get Fulcher. Robert then walked with Hughes to the house. When they arrived at the door, Robert went inside and called Fulcher's name but did not receive an answer. Robert then went inside the house. At that point, Hughes said he just would step in if that was all right.

{¶ 44} While Hughes waited inside at the open doorway, Robert went in. Fulcher then came outside without Robert. At that time, Hughes introduced himself as being from the sheriff's office and said some detectives wanted to talk to Fulcher. State's Ex. 3 (video from Deputy Hughes's bodycam, measured in minutes and seconds), 1:59 to 3:20.

{¶ 45} Fulcher willingly came outside and walked over to a detective, who began to explain that once a year they did an eradication operation. However, before the detective could finish this sentence, Fulcher stated, "I grow for my own personal use because it's medical; I just don't have a card for it." The detective then asked Fulcher how many plants he had "back there," and Fulcher said he had two, behind his shop. *Id.* at State's Ex 3, 3:40 to 3:59, and Supp. Tr. at 9, 16-17, and 19.

{¶ 46} At that point, Robert walked outside and said that he had to leave to pick up his wife. The detective assured Robert that Fulcher was not under arrest. Instead, the police were just going to pick up the plants, and another officer would come by to get Fulcher's information. *Id.* at 4:17 to 4:31. Deputy Hughes then told Fulcher he was

going to his cruiser to get a consent form, which Fulcher signed a few minutes later. *See* State's Ex. 4 and Supp. Tr. at 8-9.

{¶ 47} The consent form stated that Fulcher had been informed of his constitutional right not to have a search of the premises without a search warrant and authorized Detective Tavner and agents of the Greene County ACE Task Force to search the backyard and field and to take property. *Id.* at Ex. 4. Deputy Hughes testified that Fulcher was very cooperative. Supp. Tr. at 14. That is borne out by the video, which indicates that the entire transaction was very cordial on both sides. The video also shows officers carrying away two very large plants; at that time, Tavner told Fulcher the police would be in touch after lab results were received. The police then left the property. Ex. 3 at 14:37 to 15:21.

{¶ 48} Under the circumstances, there was no way in which the consent to search could legitimately be challenged. Furthermore, Deputy Hughes did not commit any violation when he stepped inside the doorway of Fulcher's home. He had accompanied Fulcher's brother to the house and simply stood inside the open doorway waiting for Fulcher to come out. Hughes did not search the house, nor was any evidence discovered while he stood at the doorway.

{¶ 49} Regarding the issue of *Miranda* warnings, "the requirement that police officers administer *Miranda* warnings applies only when a suspect is subjected to both custody and interrogation." *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 119, citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). According to *Miranda*, custodial interrogation is " 'questioning

initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' " *State v. White*, 2018-Ohio-3076, 118 N.E.3d 410, ¶ 23 (2d Dist.), quoting *Miranda* at 444.

{¶ 50} "The ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). "Whether a person is subject to custodial interrogation is an objective question, focusing on how a reasonable person in the suspect's position would have understood the situation." *White* at ¶ 23, citing *J.D.B. v. North Carolina*, 564 U.S. 261, 270, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011). (Other citation omitted.)

{¶ 51} Fulcher clearly was not in custody, nor was he deprived of his freedom of action in any way. The police were at his property for a very short time period. In addition, Fulcher was not subjected to any interrogation or questioning. In fact, before a police officer had finished a statement about the purpose of the visit, Fulcher blurted out that he was growing marijuana. Although Fulcher stated this was for his own "personal use," the law at that time did not permit individuals to grow marijuana.

{¶ 52} Accordingly, trial counsel's performance was not deficient. Even if counsel had filed a motion to suppress based on the grounds Fulcher now suggests, it would have been futile. The second assignment of error therefore is overruled.

IV. Suppression

{¶ 53} Fulcher's third assignment of error states that:

Fulcher's Conviction Should Be Reversed Because the Trial Court Should Have Suppressed the Evidence Against Him Under the Fourth Amendment.

{¶ 54} Under this assignment of error, Fulcher contends that the trial court should have suppressed the evidence against him because Deputy Hughes illegally entered the house, even though he knew Fulcher's brother did not have authority to grant permission. According to Fulcher, this in turn led to him speaking to the police and giving them probable cause to know he possessed marijuana plants on the premises. Somehow, according to Fulcher, this also improperly led to him signing a consent form. Fulcher's Brief at p. 9.

{¶ 55} In response to Fulcher's argument, the State again incorrectly maintains that Fulcher waived any argument because he pled guilty. The State also responds to an issue Fulcher did not raise, i.e., whether competent credible evidence supported the decision that the helicopter flew over Fulcher's property at a height which allowed the officer to observe the marijuana. State's Brief at p. 7. While we agree that competent evidence existed to support the suppression decision, that is not the issue Fulcher has asserted.

{¶ 56} During the suppression hearing or thereafter, when Fulcher represented himself, no challenge was made to the fact that an officer entered the house or to the consent form. Instead, Fulcher's continued focus after he began representing himself was on a claim that the helicopter had improperly invaded the airspace over his property.

This was also the only issue raised during the suppression hearing. During the withdrawal of counsel hearing in July 2022, Fulcher discussed the fact that he wanted to file a motion concerning the suppression hearing because the State's chief witness, Aspacher, allegedly had committed perjury. With. Tr. at 38-40.

{¶ 57} As noted, on August 24, 2022, Fulcher filed a "motion to dismiss" the charges (not a suppression motion). Fulcher's objection, as it had been during the suppression hearing, was that the helicopter flown over his property had been operated below 500 feet, which constituted a trespass. Fulcher further argued that the pilot chose to fly the helicopter over the property a second time in violation of protected airspace and committed another trespass, rather than seeking a search warrant. Motion to Dismiss Charges (Aug. 24, 2022), p. 1-2. In addition, Fulcher argued a third "trespass" occurred when police officers seized his two "hemp" plants. *Id.* at p. 3.

{¶ 58} In the motion to dismiss, Fulcher also pointed to parts of the suppression hearing in which Aspacher allegedly lied, including that he could see marijuana from a distance and did not need to drop low to see it and that the officers were "free-flying" that day rather than having received information about locations to search. *Id.* at p. 12-15. Essentially, Fulcher's argument was that the helicopter was not in airspace where it had a right to be and violated the Fourth Amendment. *Id.* at p. 14. In addition, Fulcher was upset because he believed the State should have provided photographic and video evidence, as well as flight recorder data. Fulcher also implied that the State was withholding evidence. *Id.* at p. 15.

{¶ 59} In response, the State noted that motions to dismiss an indictment relate to

whether allegations in the indictment are legally sufficient and that disagreeing with a court's suppression decision is not a basis for dismissal. Response to Second Motion to Dismiss (Sept. 9, 2024), p. 1. The State also pointed out that Fulcher had consented to the search, that all evidence had been provided to the defense, and that to the extent Fulcher asserted "spoliation," any purported electronic data was never recorded by the police or the helicopter, much less intentionally destroyed. *Id.* at p. 2 and fn. 1, and 3-4.

**{¶ 60}** Fulcher's response to the State's memorandum merely reiterated his position that the helicopter was flying below 500 feet. This was supported by Fulcher's recreation of a photo the State used at the suppression hearing and diagrams Fulcher had created that he alleged showed the relationship between the helicopter and the ground. Reply to Prosecution, Motion to Dismiss (Sept. 19), p. 14.

**{¶ 61}** During a subsequent status hearing, Fulcher said his position was that the suppression decision was erroneous because: (1) the State failed to provide a photograph of the property (Ex. 5) to the defense before the suppression hearing; and (2) the helicopter was not in the place where Aspacher had said it was when he testified at the hearing. Transcript of Status Hearing (Sept. 21, 2022), 3-5. On this occasion, the trial court again stressed that Fulcher should not proceed without assistance of counsel and also said counsel would also be appointed for appeal if Fulcher were indigent. *Id.* at 15-18. In response, Fulcher stated that he wanted to continue self-representation.

**{¶ 62}** The remaining status hearings and filings and so forth between September 21, 2022, and the no contest plea on April 10, 2023, concerned the issue of marijuana retesting and how that might occur. An exception was the court's decision in January

2023, which overruled Fulcher's motion to dismiss based on the fact that the issues had been previously decided in the suppression decision and various other court rulings and that the issues being raised were questions of fact, not law. Order (Jan. 30, 2023), p. 1.

{¶ 63} In light of these facts, we review Fulcher's argument for plain error only. A party who fails to object "has forfeited all but plain error." *McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, at ¶ 247, citing Crim.R. 52(B) and *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). In this regard, Crim.R. 52(B) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To establish plain error, "appellant must show that an error occurred, that the error was plain, and that the error affected his substantial rights," i.e., that the error affected the trial's outcome. *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 52, citing *Barnes* at 27.

{¶ 64} In the context of affecting a trial outcome, the accused must "demonstrate a reasonable *probability* that the error resulted in prejudice – the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). Furthermore, "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 65} Our review reveals no basis for reversing under the plain error doctrine. As

noted, the fact that Deputy Hughes briefly stepped inside the doorway to wait for Fulcher to come outside was irrelevant. There was no evidence that Fulcher failed to leave the premises voluntarily or that Hughes discovered any evidence while standing in the doorway. Moreover, as we said, when Fulcher went outside, he blurted out incriminating information before an officer was even able to finish explaining why the police were there. Finally, there was no indication that Fulcher's consent to search was the result of coercion. Accordingly, no error or plain error occurred in denying Fulcher's "motion to dismiss," and the third assignment of error, therefore, is overruled.

## V. Recusal

{¶ 66} Fulcher's fourth and final assignment of error states that:

Fulcher's Conviction Should Be Reversed Because the Trial Court, Who Later Recused Itself, Should Not Have Ruled on Fulcher's Motion to Suppress.

{¶ 67} Under this assignment of error, Fulcher argues that because the original trial judge recused himself before ruling on competency, he should have recused himself earlier before he ruled on the motion to suppress. The State failed to respond to this argument other than again relying on the effect of the "guilty" plea.

{¶ 68} The relevant facts are that the original judge held a suppression hearing on November 21, 2021, and filed a judgment denying the suppression motion on December 21, 2021. Around two months later, Fulcher's attorney filed a motion seeking a determination of competency, and the judge ordered an evaluation. Before the judge

heard the competency matter, Fulcher filed a motion seeking the judge's recusal. However, on March 31, 2022, the judge filed an entry indicating he would not consider this or another pro se motion because Fulcher was currently being represented by counsel. Entry (March 31, 2022). The judge did attach the recusal motion to this entry. *Id.* at p. 1.

{¶ 69} In the recusal motion, Fulcher alleged a conflict of interest because the judge had "close involvement with the Greene County, Ohio ACE Task Force during his tenure with the Greene County, Ohio Prosecutor's Office." Motion for Recusal, p. 2. Fulcher further claimed that the judge had an "emotional outburst" during the suppression hearing when defense counsel questioned the visual acuity of former Det. Aspacher. In addition, Fulcher argued, as he did many times, that Aspacher had committed perjury during the suppression hearing. *Id.*

{¶ 70} During the April 27, 2022 competency hearing, the judge first found Fulcher competent based on the report of the evaluating doctor and the parties' stipulation to the report. Comp. Tr. at p. 5-6. The court then noted it had intended to hear the withdrawal motion of Fulcher's attorney but had decided not to do so due to a letter Fulcher had written to the Forensic Psychiatry Center of Western Ohio during the competency evaluation process. *Id.* at 6. In the letter, Fulcher indicated that the judge had been an assistant prosecutor and that during this time, the spotter in Fulcher's case (Aspacher) had testified in federal court for a case for Greene County. *Id.* Given this letter, the judge said he would obtain a visiting judge and would let the judge decide on counsel's motion to withdraw. *Id.* at 6-7.

{¶ 71} R.C. 2701.03(A) provides that, "If a judge of the court of common pleas allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court in accordance with division (B) of this section." Furthermore, Ohio Constitution, Article IV, Section 5 states: "The chief justice of the supreme court or any judge of that court designated by him shall pass upon the disqualification of any judge of the courts of appeals or courts of common pleas or division thereof." "This provision vests exclusive authority to pass on disqualification matters in the chief justice or her designee." *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 62. Consequently, if litigants fail to file such affidavits, appellate courts cannot void a trial court judgment on a disqualification basis. *Id.* at ¶ 63, citing *Beer v. Griffith*, 54 Ohio St.2d 440, 441, 377 N.E.2d 775 (1978). *Accord State v. Cook*, 2d Dist. Champaign No. 2013-CA-22, 2014-Ohio-3165, ¶ 13.

{¶ 72} In *Cook*, the defendant claimed the trial judge should have been disqualified from presiding at a 2013 revocation hearing because the judge had previously served as the prosecutor on the same case and had personally advocated in 2010 for community control revocation. *Id.* at ¶ 12. We concluded that we lacked authority to consider the issue because the defendant had not filed a disqualification affidavit with the Supreme Court of Ohio. *Id.* at ¶ 13, citing *Osie*. We further held that even if we were to consider the matter, a defendant's failure to timely object to the judge's participation waived the

objection. *Id.* at ¶ 14.

**{¶ 73}** Regarding the particular situation in *Cook*, the defendant knew the trial judge had previously participated in his case as prosecutor but failed to file a disqualification affidavit or seek recusal. *Id.* at ¶ 16. Similarly, here, Fulcher stated in his March 2022 motion for recusal that he made his counsel aware of the alleged conflict of interest *before* the suppression hearing but "they" (he and his counsel) decided not to seek recusal before the hearing. Motion to Recuse at p. 2. Having chosen not to timely seek recusal, Fulcher waived any objections.

**{¶ 74}** In his brief, Fulcher suggests under this assignment of error that trial counsel's ineffectiveness is the reason he pled no contest to the charges. Fulcher's Brief at p. 9. First of all, this is not part of the record. *See* Plea Tr. at 3-28. Instead, Fulcher's expressed concerns at that point (the day of the scheduled trial) were that he would not be able to challenge the helicopter search as being invalid and that he could not introduce evidence of the marijuana test, since he did not have a witness on that matter. *Id.* at 3-11. Fulcher made no mention of the original judge's alleged "bias."

**{¶ 75}** Moreover, after the original trial judge recused himself and a visiting judge granted counsel's motion to withdraw, Fuller elected to represent himself. Fulcher again moved for suppression (which was incorrectly phrased as a motion to dismiss). Again, however, Fulcher's ground for dismissal was not that the original trial judge should have recused himself. Instead, Fulcher argued that former Detective Aspacher had committed perjury and that the helicopter had flown below what was permitted, therefore rendering the helicopter search invalid. As indicated, the visiting judge refused to reconsider the

issue as it had already been decided.

{¶ 76} The Supreme Court of Ohio has "repeatedly declared that 'pro se litigants * * * must follow the same procedures as litigants represented by counsel.' " *State ex rel. Neil v. French*, 153 Ohio St.3d 271, 2018-Ohio-2692, 104 N.E.3d 764, ¶ 10, quoting *State ex rel. Gessner v. Vore*, 123 Ohio St.3d 96, 2009-Ohio-4150, 914 N.E.2d 376, ¶ 5. Moreover, the rule is " 'well established that pro se litigants are presumed to have knowledge of the law and legal procedures and that they are held to the same standard as litigants who are represented by counsel.' " *State ex rel. Fuller v. Mengel*, 100 Ohio St.3d 352, 2003-Ohio-6448, 800 N.E.2d 25, ¶ 10, quoting *Sabouri v. Ohio Dept. of Job & Family Serv.*, 145 Ohio St.3d 651, 654, 763 N.E.2d 1238 (2001). Having elected to proceed pro se, Fulcher is bound by settled law, which indicates that he cannot raise (and has waived) issues pertaining to the original judge's alleged bias. Accordingly, the fourth assignment of error is overruled.

## VI. Docket Issue

{¶ 77} As a final matter, we note that the docket summary the clerk filed with our court on July 25, 2023, incorrectly states that Fulcher's plea to R.C. 2925.11(A) was "guilty." Docket Summary at p. 2. This is incorrect, as the plea was "no contest." The court's online docket also incorrectly states in several places that Fulcher pled guilty.

## VII. Conclusion

{¶ 78} All of Fulcher's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and TUCKER, J., concur.